Emilio **DE LA CRUZ**, Plaintiff,

v.

The **CHILDREN'S TRUST OF MIAMI-DADE COUNTY**, Defendant.

Case No: 10-24625.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 2, 2012.

Mayra Lizette Kadzinski, Int'l Immigration & Labor Services, Miami, FL, for Plaintiff.

William X. Candela, Eric Alberto Rodriguez, Dade County Attorney's Office, Miami, FL, for Defendant.

## FINAL ORDER OF SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment (DE # 17), filed November 28, 2011. Therein, Defendant The Children's Trust of Miami–Dade County ("Children's Trust") seeks summary judgment on all counts. The Court is fully briefed in the matter.[1] Upon consideration of the pleadings and the uncontested facts on the record, the Court finds that summary judgment is warranted in favor of Defendant.

## I. Background

This is an employment discrimination case that hinges on the legitimacy of Defendant's Reduction in Force, as well as the sufficiency of Defendant's accommodations of Plaintiff's disability pursuant the Family and Medial Leave Act ("FMLA")[2] and the Americans with Disabilities Act ("ADA").[3] On December 27, 2010, Plaintiff Emilio de la Cruz, a 45-year-old Hispanic male of Mexican origin suffering from chronic migraines, filed a complaint, alleging that his former employer, Defendant Children's Trust,[4] discriminated against him because of his race, national origin,[5] medical disability, and age,[6] retaliated against him for exercising his rights under the ADA, FMLA, and Title VII, subjected him to a hostile work environment in violation of Title VII, and denied his rights under the ADA and FMLA. (Compl., DE # 1). Defendant Children's Trust has denied liability for all counts, (Ans., DE # 9). The following facts are undisputed.[7]

In February 2005, Plaintiff de la Cruz applied for a position at Defendant Children's Trust as a Capacity Training Specialist. He was interviewed by Tisa McGhee, Trust Capacity Training Manager, and Dr. K. Lori Hanson, Director of Research Evaluation and Training. (de la

---

1. Plaintiff filed a Response (DE # 22) on January 9, 2012, and Defendant filed a Reply (DE # 25) on January 20, 2012.

2. The FMLA entitles an employee with a serious medical condition to take "a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612.

3. The ADA "prohibits discrimination against a qualified individual with a disability based on that disability when the discrimination involves the hiring, advancement, termination or conditions of employment of that qualified individual." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1327(11th Cir.1998); 42 U.S.C. § 12112(a).

4. Defendant Children's Trust is a special taxing district funded through ad valorem taxes that is responsible for supporting children and family initiatives by funding programs throughout Miami–Dade County. (The Children's Trust Charter, DE # 18–1).

5. Plaintiff brings the race and national origin discrimination, retaliation, and hostile work environment claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e *et seq.* "Title VII forbids discrimination on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion." *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994).

6. The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

7. The undisputed facts are from Defendant's Statement of Material Facts (DE # 18), and Plaintiff's response thereto (DE # 23).

Cruz Dep. 32:20–33:6, DE # 18–3). Plaintiff de la Cruz was hired and served as an at "will" employee while employed at Children's Trust. (DE # 18–4).

As a Capacity Training Specialist, Plaintiff de la Cruz was assigned to the Research Evaluation and Training Section where he was responsible for preparing and delivering training classes to personnel working with children, youth, and family programs around the county. (DE # 18–7). Plaintiff de la Cruz reported to McGhee who, in turn, reported to Dr. Hanson, (de la Cruz Dep. 34:23–35:13, DE # 18–3). Dr. Hanson reported to Mr. Abety, the Chief Executive Office of Defendant Children's Trust. (*Id.*)

In 2005, Plaintiff de la Cruz was diagnosed with chronic migraine headache. Sometime in 2006, Plaintiff de la Cruz had to seek "medical attention due to this condition. Said condition resulted in other ailments such as breathing problems and sleep apnea...." (EEOC charge, DE # 18–5). After his diagnosis, Plaintiff de la Cruz requested accommodations pursuant to the ADA and leave pursuant to the FMLA. (de la Cruz Dep. 71:11–19, DE # 18–3; June 7, 2006 de la Cruz Email, DE # 18–6). Defendant Children's Trust granted Plaintiff de la Cruz' requests for FMLA leave in 2006 and 2007, as well as his lone request for ADA accommodation to modify the lights in his office and adjust the air temperature in July 2006. (de la Cruz Dep. 71:11–19, 161:10–15, DE # 18–3).

Plaintiff de la Cruz claims that beginning in 2006, McGhee continually mocked his "thick Mexican accent." (de la Cruz Dep. 133:9–134:9, DE # 18–3). According to Plaintiff de la Cruz, McGhee is the only employee of Defendant Children's Trust who directed discriminatory statements towards him. (de la Cruz Dep. 111: 4–7, DE # 18–3). Plaintiff de la Cruz testified that last time McGhee made reference to his Mexican accent and ancestry was on May 5, 2008. (de la Cruz Dep. 176:18–19, DE # 18–3).

In 2006 and 2007, Plaintiff de la Cruz filed multiple written internal complaints about McGhee's treatment of him in the workplace. (March 27, 2006 Email, DE # 24–12; de la Cruz Sept. 14, 2007 Memo, DE # 18–9). Bob Bromberg, Defendant Children's Trust's Human Resources consultant, received the complaints and held meetings with Plaintiff de la Cruz, McGhee, and Dr. Hanson "to address concerns regarding Mr. de la Cruz's relationship with his supervisor, Tisa McGhee." (Bromberg March 30, 2006 Memo, DE # 18–8). Also in 2006, Plaintiff de la Cruz met with Mr. Abety to discuss McGhee. (de la Cruz Dep. 98:15–99:16, DE # 18–3).

Along with McGhee's allegedly mocking comments, Plaintiff de la Cruz claims that McGhee's discriminatory attitude influenced her to issue adverse performance evaluations of Plaintiff de la Cruz that affected his salary and ultimately led to his termination.[8] For the 2005–2006 performance evaluation, McGhee issued Plaintiff de la Cruz an overall "Very Good"[9] and recommended a 5% salary increase. (DE # 18–10). Plaintiff de la Cruz believes that McGhee did not issue an overall rating of "Outstanding,"[10] along with a 6%

---

**8.** From 2005–2008, Defendant's performance evaluation form included the labels "Unsatisfactory," "Needs Improvement," "Satisfactory," "Very Good," and "Outstanding." For the 2008–2009 year, the performance evaluations were modified to include the labels "Poor," "Needs Improvement," "Effective," and "Outstanding."

**9.** "Very Good" is defined as "Results clearly exceed most position requirements. Performance is of high quality and is achieved on a consistent basis." (DE # 18–10, at 3).

**10.** "Outstanding" is defined as "Performance is exceptional is all areas and is recognizable

salary increase, because of her discriminating attitude. (de la Cruz Dep. 123:8–11, DE #18–3). The following year, for the 2006–2007 performance evaluation, McGhee issued Plaintiff de la Cruz an overall rating of "Outstanding" and recommended a 6% salary increase—the maximum increase allowable. (DE #18–11). Then on February 28, 2008, for the 2007–2008 performance evaluation, McGhee issued Plaintiff de la Cruz an overall rating of "Very Good" and recommended the maximum 6% salary increase. (DE #18–12). Finally, for the 2008–2009 performance evaluation, McGhee issued Plaintiff de la Cruz an overall rating of "Effective," which was defined using the same standard as "Very Good" from the prior years' evaluations. (DE #18–13). In March of 2009, Plaintiff filed written objections to the 2008–2009 performance evaluation. (Evaluation Feedback, DE #18–13, at 8; DE #24–7).

In October of 2009, as a result of a dramatic reduction in property tax revenues, Defendant's budget was reduced. (Abety–Gutierrez Decl. ¶4, DE #18–2). Defendant implemented a Reduction in Force ("RIF") to deal with the budget shortfall. (*Id.*) As a result of the RIF, nine employees were terminated and three departments were eliminated. (Abety–Gutierrez Decl. ¶¶5–6, DE #18–2). Four of the employees were terminated based on retention scores calculated based on the employees' seniority and performance evaluations. (Abety–Gutierrez Decl. ¶6, DE #18–2). Five employees, including Plaintiff de la Cruz, were terminated without calculation or consideration of their retention scores because their entire departments were eliminated. (Abety–Gutierrez Decl. ¶5, DE #18–2).

On October 16, 2009, after he was terminated, Plaintiff de la Cruz filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

(EEOC Charge, DE #18–5). On September 30, 2010, the EEOC issued a "Right to Sue" letter. (DE #18–15). Then, on December 27, 2010, Plaintiff de la Cruz filed the instant action against Defendant Children's Trust. Before the Court now is Defendant Children's Trust's Motion for Summary Judgment.

## II. Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual

as being far superior to others." (DE #18– 10, at 3).

inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252, 106 S.Ct. 2505. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

### III. Analysis

In the above-styled action, Plaintiff alleges that while he was employed at Defendant Children's Trust, he was discriminated against because of his race, national origin, medical disability, and age, retaliated against for exercising his rights under the ADA, FMLA, and Title VII, subjected to a hostile work environment, and denied his rights under the ADA and FMLA. (Compl., DE # 1). Defendant Children's Trust has moved for summary judgment on the discrimination and retaliation claims on that basis that Plaintiff has failed to make out a *prima facie* case of discrimination and that Plaintiff has failed to rebut Defendant's offering of a Reduction in Force ("RIF") as a legitimate, nondiscriminatory reason for Plaintiff's termination. Defendant Children's Trust also argues that summary judgment is warranted in its favor on the FMLA interference and ADA accommodation claims because the undisputed evidence shows that Defendant granted all of Plaintiff's FMLA and ADA requests. Lastly, Defendant moves for summary judgment on the hostile work environment claim on the basis that it is time-barred. For the following reasons, the Court finds it must grant summary judgment on all counts in Defendant's favor.

### A. Plaintiff Was Terminated Pursuant to a Reduction in Force

The significance of the RIF in this matter cannot be underestimated. With the exception of the hostile work environment claim, all of Plaintiffs discrimination claims hinge on the legitimacy of and the circumstances surrounding the RIF. When Plaintiff filed the Complaint in December of 2010, the crux of his allegations of adverse treatment was that his direct supervisor, McGhee, gave him adverse performance evaluations that reduced his retention score, ultimately resulting in his termination. (Compl. ¶¶ 24, 31, 32, DE # 1). At that time, Plaintiff labored under the belief that Defendant's decision to terminate Plaintiff was directly influenced by the purported adverse evaluations. (Compl. ¶ 31).

Now, with the benefit of close to a year of discovery, the uncontested evidence on the record reveals that Plaintiff's termination pursuant to the RIF occurred because his entire section, along with two other sections, was eliminated. Further, the uncontested evidence shows that although Defendant calculated and considered retention scores, based on seniority and performance evaluations, for a majority of the employees, Defendant did not apply the retention score system to any of the employees whose entire department was being eliminated. Consequently, the uncontested evidence proves that the performance evaluations, no matter how positive or negative a factfinder may find them to be, did not influence Defendant's decision to terminate Plaintiff because they were never considered. Given this assessment of the uncontested evidence on the record, the Court now turns to the implications of the RIF on Plaintiff's claims of discrimination and retaliation.

#### i. *Employment Discrimination Claims*

 To succeed with an employment discrimination claim, the burden is on the plaintiff to prove that the plaintiff was terminated by the defendant employer because of the plaintiff's race, national origin, medical disability, or age. *See, e.g., Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351–52, 174 L.Ed.2d 119 (2009). To make out a *prima facie* case of discrimination when the termination is the result of an RIF, a plaintiff must show: (1) "that he was in a protected ... group and was discharged;" (2) "that he was qualified for another position at the time of discharge;" and (3) "circumstantial or direct evidence by which a factfinder might reasonably conclude that the employer intended to discriminate ... in reaching the decision not to place him in that other position." *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567–68 (11th Cir.1992).

 Here, it is uncontested that Plaintiff, a 40+ Hispanic male of Mexican origin with chronic migraine, is a member of the groups protected by Title VII, the ADA, and AEDA so as to satisfy the first element. There is a dearth of evidence, however, in support of the second element—that Plaintiff was qualified for another position that was available at or closely after the time of discharge. Although "Plaintiff alleges that Plaintiff was qualified to continue working for the Trust in any other capacity or could have been rehired as other employees with less seniority and experience," Plaintiff's qualifications, absent the existence of an open

position, are insufficient to satisfy the second element of a *prima facie* case of discrimination in the context of an RIF. (DE # 22, at 6). In addition, although Plaintiff claims an employee who worked in a different department took over some of Plaintiff's former responsibilities and duties after the RIF, Defendant is under no obligation to "establish an interdepartmental transfer program during the course of an RIF." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir.1996) (finding evidence of discrimination where defendant employer did not consider plaintiff for "job openings for which [plaintiff] was qualified [that] *existed* at the time of her termination ....") (emphasis added). Further, despite Plaintiff's stated belief during a deposition that Defendant rehired other employees who were terminated during the RIF, nowhere on the record is there any evidence that there was an available position for which Plaintiff was qualified or that any other employees were rehired to fill positions for which Plaintiff was qualified.[11] (DE # 23, ¶ 29).

Absent the offering of any evidence in support of Plaintiff's allegations, Plaintiff has failed to create a factual issue as to whether plaintiff was qualified to assume an alternate open position. *See Mitchell*, 967 F.2d at 568 (finding evidence such as an interoffice memorandum listing open positions, defendant employer's answers to interrogatories, or admissions to create a factual issue as to whether plaintiff was qualified to assume an alternate open position). Accordingly, upon the finding that

---

**11.** In deposition testimony, Plaintiff claims based on word of mouth of other former employees that Maria Cadavid was rehired as a consultant after the Fiscal Analysis Section was eliminated pursuant the RIF. (de la Cruz Dep. 50:3–52:15, DE # 18–3). Plaintiff offers no evidence or suggestion as to how he would be qualified to perform fiscal analysis when he was previously employed to conduct train-

ing for individuals who worked with child, youth, and family programs throughout the county. Furthermore, Cadavid's alleged rehiring directly contradicts two of Plaintiff's proposed theories of discrimination as she too is a member of groups protected by Title VII and the AEDA. (Abety–Gutierrez Decl. ¶ 6, DE # 18–2).

Plaintiff has failed to establish a *prima facie* case of employment discrimination in the context of an RIF, the Court concludes that summary judgment in favor of Defendant is warranted on the claims of discrimination based on disability (Count 1), race (Count III), national origin (Count III), and age (Count VI).

### ii. *Retaliation Claims*

▮▮▮▮ Along with the employment discrimination claims, Plaintiff also alleges retaliation under the ADA, FMLA, and Title VII. To advance past the summary judgment stage, the plaintiff must offer either direct evidence of retaliation or establish a *prima facie* case of retaliation with circumstantial evidence. *See generally Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir.2001) (instructing that the *McDonnell Douglas* burden-shifting framework applies to retaliation claims). For a supervisor's comment or demeanor to constitute direct evidence of retaliation, the comment or action must conclusively show bias that caused the adverse result in the workplace. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1993). A plaintiff who offers circumstantial evidence must establish a *prima facie* case of retaliation before the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse action. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir.2000). If the defendant employer offers a legitimate, nondiscriminatory reason for the adverse action, then the burden shifts back to the plaintiff to demonstrate that the employer's alleged nondiscriminatory reason was pretext for retaliation. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004). To establish pretext, a plaintiff must present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Martin v. Brevard Cnty. Pub.*

*Schs.*, 543 F.3d 1261, 1268 (11th Cir.2008) (finding evidence that defendant employer warned plaintiff about taking FMLA leave and then fired plaintiff while on leave to be sufficient to create an issue of fact regarding pretext).

▮▮▮▮ To state a *prima facie* case of retaliation, a plaintiff must offer evidence that: "(1) [he] engaged in a statutorily protected activity; (2) [he] suffered an adverse employment decision; and (3) the decision was causally related to a protected activity." *See generally Pereda v. Brookdale Senior Living Cmty., Inc.*, 666 F.3d 1269, 1275 (11th Cir.2012) (setting forth the FMLA relation elements); *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir.2008) (setting forth the Title VII retaliation elements); *Standard*, 161 F.3d at 1328 (setting forth the ADA relation elements). Given the chronology of Plaintiff's ADA and FMLA requests, Title VII complaints about his supervisor, and the alleged retaliatory act of termination based on heightened scrutiny and negative performance reviews, the Court will assume without deciding that Plaintiff has set forth a *prima facie* case of retaliation. The Court now turns to the Parties' arguments with regard to whether the RIF was legitimate or pretextual.

▮▮▮▮ As was previously discussed at length, Defendant claims that it terminated Plaintiff without regard to Plaintiff's employee file or performance evaluations when his entire department was eliminated pursuant to an RIF. Plaintiff contends that the RIF was pretextual and maintains that the real reason he was terminated is that Defendant's CEO "was annoyed with him for airing his complaints." (DE # 22, at 13).

In the Response in Opposition to the Motion for Summary Judgment, Plaintiff claims that "[t]he discriminatory animus of a decision maker," whether Defendant con-

sidered Plaintiff's performance evaluations, and the temporal proximity of Plaintiff's ADA and FMLA requests with his termination are all outstanding issues of material fact to preclude entry of summary judgment. (DE # 22). Plaintiff, however, presents no evidence with regard to these purported disputed facts aside from his own speculations into Defendant's decisionmaking process.

For instance, there is nothing on the record to support Plaintiff's allegation that Mr. Abety, Defendant's CEO, felt "discriminatory animus" toward Plaintiff.[12] In addition, it is undisputed that Defendant did not consider Plaintiff's performance evaluations.[13] The Court finds that Defendant's decision not to calculate and consider retention scores for employees who were being terminated because their entire department was being eliminated, standing alone, is insufficient to create an issue of fact concerning pretext. Likewise, Plaintiff's speculative testimony is insufficient to create a factual issue on the matter because Plaintiff does not possess the requisite personal knowledge to testify as to Defendant's decisionmaking process. Finally, although Plaintiff made the ADA and FMLA requests prior to his termination, there is insufficient temporal proximity to create an issue of fact in this regard. Plaintiff's one and only ADA request was made on July 7, 2006, over three years prior to his termination, and Plaintiff's FMLA requests were made in 2006 and 2007, two to three years prior to his termination. The Court finds that the temporal proximity suggested by Plaintiff is not close enough to create an issue of fact with regard to pretext. *See, e.g., Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (indicating that temporal proximity as evidence of causation must be a matter of months, and not years).

Accordingly, the Court finds that Plaintiff has failed to raise a disputed issue of material fact with regard to pretext to preclude entry of summary judgment on the retaliation claims. Therefore, summary judgment is warranted in Defendant's favor for Plaintiff's retaliation claims (Count II, Count IV, and Count V).

**B.** *All of Plaintiff's FMLA and ADA Accommodation Requests Were Granted*

 Pursuant to the ADA, an employer may not discriminate against a disabled employee by refusing to make "reasonable accommodations." 42 U.S.C. § 12101 *et seq.*, If an employee has a disabling medical condition, the FMLA entitles the employee to take leave when medically necessary. 29 U.S.C. § 2612. To make out a claim of FMLA interference, a plaintiff "must demonstrate by a preponderance of the evidence that [he] was denied a benefit to which [he] was entitled." *Pereda*, 666 F.3d at 1274 (citing *Harley v. Health Ctr. of Coconut Creek*, 487 F.Supp.2d 1344, 1357 (S.D.Fla.2006)).

 Here, Plaintiff was entitled to take leave when medically necessary, and it is uncontested that Defendant granted

---

**12.** According to Plaintiff, when he spoke with Mr. Abety in 2006 about the issues with his supervisor, Mr. Abety responded: "that he was very sorry to hear that, but he was sorry that the situation deteriorated to that point. That it should be better if I talk to Dr. Hanson. That is was my responsibility, that I allowed the situation to get that far." (de la Cruz Dep. 99:11–16, DE # 18–3). The Court finds that no jury could reasonably infer discriminatory animus from this statement.

**13.** Given that it is undisputed that Defendant did not consider Plaintiff's performance evaluations, whether Plaintiff's supervisor retaliated against him by issuing purported negative evaluations is immaterial as that theory of retaliation lacks the requisite causation.

*all* of Plaintiff's FMLA leave requests. Further, although Plaintiff contends that it was inappropriate for his supervisor to request his confidential medical information, the Court finds that when an employee takes unforeseeable FMLA leave, inquiries into whether the employee's current condition qualifies for FMLA leave and the expected duration of the leave are reasonable and do not constitute interference. *See Strickland,* 239 F.3d at 1208. Additionally, with regard to Plaintiff's ADA accommodation claim, it is undisputed that Defendant accommodated Plaintiff's one and only ADA accommodation request. Accordingly, the Court finds that it must grant summary judgment in Defendant's favor with respect to Plaintiff's FMLA interference claim (Count V) and ADA accommodation claim (Count I).

### C. *Plaintiff's Hostile Work Environment Claim Is Time–Barred*

 The facts alleged in support of Plaintiff's Title VII hostile work environment claim are that his supervisor made consistent comments about his race and national origin that were offensive and exacerbated his medical condition. It is uncontested that the last time Plaintiff's supervisor made any reference to Plaintiff's accent, ancestry, or national origin was on May 5, 2008. Yet, Plaintiff did not file his complaint alleging hostile work environment with the EEOC until October 26, 2009. As Plaintiffs EEOC complaint was well beyond the maximum 300–day filing requirement, the Court finds that Plaintiff's hostile work environment claim is time-barred. *See generally Maynard v. Pneumatic Prods. Corp.,* 256 F.3d 1259, 1262 (11th Cir.2001). Accordingly, summary judgment in Defendant's favor is warranted on Plaintiff's claim of hostile work environment (Count III).

### IV. Conclusion

Upon consideration of the uncontested facts on the record, the Court finds that Plaintiff de la Cruz has failed to set forth a *prima facie* case of employment discrimination in the context of a Reduction in Force. The also Court finds that Plaintiff de la Cruz has not met his burden to advance past the summary judgment stage with the retaliation claims as Plaintiff de la Cruz has failed to rebut Defendant Children's Trust's offering of a legitimate, non-discriminatory reason for his termination. In addition, the Court finds that Plaintiff de la Cruz' FMLA interference and ADA accommodation claims are without merit and unsupported by any evidence on the record. Finally, the Court finds that Plaintiff de la Cruz' hostile work environment claim is time-barred.

Accordingly, upon a careful review of the undisputed facts on the record and being otherwise advised, it is hereby **OR-DERED, ADJUDGED, and DECREED** as follows:

1. Defendant's Motion for Summary Judgment (**DE # 17**) be, and the same is hereby, **GRANTED.**

2. The Pretrial Conference scheduled for February 3, 2012 and the Trial scheduled for March 26, 2012 are hereby **CANCELLED.**

3. The above-styled action is **DIS-MISSED with prejudice.**

4. The Clerk is directed to **CLOSE** this case.

5. All pending Motions are **DENIED as moot.**