Myra **CALHOUN**, Plaintiff,

v.

**EPS CORPORATION**, Defendant.

**Civil Action No. 1:13–cv–2954–TCB.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Aug. 8, 2014.

Chuck Richard Pardue, Chuck R. Pardue, Attorney at Law, Martinez, GA, for Plaintiff.

Erin Jennifer Krinsky, Robert W. Capobianco, Jackson Lewis, LLP, Atlanta, GA, for Defendant.

## ***ORDER***

TIMOTHY C. BATTEN, SR., District Judge.

This age-discrimination case is before the Court on cross-motions for summary judgment brought by Plaintiff Myra Calhoun and Defendant EPS Corporation.

## I. Background

EPS is a private corporation that provides technology training to United States Army personnel at Fort Gordon, near Augusta, Georgia. EPS hires trainers and then posts them at Fort Gordon; Calhoun was one of those trainers. EPS hired her in August 2009, and she worked at Fort Gordon until she was terminated in June 2011.

The nature of Calhoun's employment is somewhat more complex than the average employee's. Although EPS hired Calhoun, paid her wages, and eventually made the decision to terminate her, much (if not

most, or even all) of her work was for the Army. She was based at Fort Gordon, she trained Army personnel, she reported directly to Army supervisors, and her Army supervisor exercised some influence over EPS's personnel decisions. She was employed by EPS but was, in essence, contracted out to the Army. As the EEOC put it: EPS and the Army were her joint employers.

Calhoun alleges two violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621. She first claims that she did not receive raises because of her age. She previously filed a complaint with the Army's equal employment opportunity office alleging as much.

When EPS discovered that Calhoun filed that initial complaint, it terminated her. EPS believed that she had filed a meritless EEO complaint against the Army to meddle with an internal matter involving her husband, who was a full-fledged Army employee. EPS thought that because it was Calhoun's employer, she should have brought her discrimination complaint against it. EPS believed that she acted improperly by instead bringing her complaint against the Army. Her termination gave rise to her second claim: that she was terminated in violation of the ADEA's prohibition on retaliation.

Due to Calhoun's unusual employment relationship, both EPS employees and Army personnel are relevant to her action.

Charles White was the president of EPS's field services division. He was the ultimate EPS decision-maker on personnel matters; he determined Calhoun's pay and eventually made the decision to terminate her.

Mike Martinez was a civilian employee in the Army's Communications–Electronics Command. He was responsible for coordinating training for Army personnel, and he interacted with private-sector companies, such as EPS, that provided training to the Army. He would go to EPS or other contractors, telling them what was needed, including the kinds of instructors required. To that end, he exercised some influence in EPS's personnel decisions. For instance, Martinez would interview prospective instructors and ask EPS to hire those that he "really wanted." And while he did not make any final decisions on behalf of EPS, he recommended that EPS hire Calhoun, which it did; and, as explained below, he could have recommended her for a raise but did not. He was also the most senior Army employee responsible for day-to-day supervision of trainers, like Calhoun, who worked at Fort Gordon. Subordinate to Martinez were either one or two Army civilian employees who supervised Calhoun. Fred Andrews was the leader of Calhoun's team, making him her direct supervisor at Fort Gordon. Initially, Andrews reported directly to Martinez, but later he reported to Don Berard, who then reported to Martinez.

When Calhoun was hired, Martinez told her that she would be eligible for a raise after her ninety-day performance review. In December 2009, approximately ninety days after she was hired and after she had received a positive review, she asked Martinez about a raise, but he was noncommittal. After that, Calhoun did not speak to anyone about a raise until early 2011. At that time she again asked Martinez, and he said his "budget was not going to allow for a raise." In March 2011, she asked White, the ultimate decision-maker at EPS, how raises were handled. He said he would get a phone call from the relevant Army personnel recommending an EPS employee for a raise, which indicated to him that the employee deserved a raise. After receiving such a call, he would consider the recommendation and other factors to determine whether a raise was warranted.

For Calhoun to receive a raise, then, a chain of Army personnel would have to

recommend it. Andrews, the Army civilian employee who directly supervised her, would first recommend a raise to Berard, Andrews's supervisor. If Berard agreed, he would recommend a raise to Martinez. And if Martinez agreed, he would recommend a raise to White, the ultimate EPS decision-maker. Andrews did recommend Calhoun for a raise at the end of 2010, near the time of her ninety-day performance review, but the chain of recommendations apparently⁾ stopped there, never making it to White. White explained that because he never received a recommendation that Calhoun's pay be raised, he believed her performance did not warrant a raise, so he did not give her one. Calhoun alleges that while she did not receive raises, other, younger employees did.

Finally, Calhoun's husband, Rory Calhoun, is also relevant. Mr. Calhoun, like Martinez, was a civilian employee in the Army's Communications–Electronics Command. Mr. Calhoun reported directly to Martinez. In March 2011 Mr. Calhoun had a dispute with Martinez that resulted in the former's early return from deployment in Afghanistan. Calhoun knew that her husband either had filed or intended to file an EEO complaint related to his early return. She also knew that Martinez was somehow involved. This is germane because EPS believed that Calhoun's first EEO complaint—which she made against the Army—was false and made merely to support her husband and to discredit Martinez.

On May 26, 2011, Calhoun filed that first complaint with the Army's EEO office. In it she stated that the Army discriminated against her based on her age by denying her raises while other, younger employees received raises. EPS terminated Calhoun on June 10, fifteen days after she filed her complaint. She later amended her complaint to add a charge of retaliation.

In July 2011 her complaint was dismissed by the Army, which, because it is a federal agency, reviewed her complaint in the first instance. The Army determined that Calhoun was an EPS employee, not an Army employee, so she lacked standing to bring an EEO complaint against the Army. She appealed the dismissal to the EEOC, which held that the Army was in fact Calhoun's joint employer. The commission reversed and remanded the Army's decision for consideration of the merits of her complaint. On remand, the Army held that it did not discriminate against Calhoun on the basis of her age in denying her a raise. It did find evidence of retaliation, but it held that EPS was solely responsible for her termination.

In August 2011 Calhoun filed a charge with the EEOC alleging age discrimination and retaliation on the part of EPS. After conducting an investigation, the commission found no merit in Calhoun's discrimination complaint. It did, however, find "reasonable cause to conclude that [Calhoun] was retaliated against for opposing unlawful employment practices, in violation of the ADEA," and it held "that retaliatory animus was the primary motivating factor for [Calhoun]'s discharge."

After the EEOC issued a right-to-sue letter, Calhoun filed this suit against EPS in September 2013. She brings the same two claims here: that EPS violated the ADEA by (1) denying her raises because of her age and (2) retaliating against her after she filed the first discrimination complaint against the Army. Both Calhoun and EPS move for summary judgment; EPS on both claims, and Calhoun on only the second.

## II. Applicable Law

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R.CIV.P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party would have the burden of proof at trial, that party "must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1438 (11th Cir.1991) (quoting *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548).

## B. ADEA

The ADEA prohibits employers from discriminating against employees based on their age and retaliating against employees who engage in ADEA-protected activity. An employee can use direct or circumstantial evidence to make out either type of claim. *See Kragor v. Takeda Pharm. Am., Inc.,* 702 F.3d 1304, 1308 (11th Cir.2012) (discrimination); *de la Cruz v. Children's Trust of Miami–Dade Cnty.,* 843 F.Supp.2d 1273, 1281 (S.D.Fla. 2012) (retaliation) (citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1207 (11th Cir.2001)).

Direct evidence is "evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs,* 512 F.3d 1296, 1300 (11th Cir.2008) (quoting *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086 (11th Cir.2004)). It conclusively shows discrimination or retaliation without any inference or presumption. *Wilson,* 376 F.3d at 1086. Circumstantial evidence is "indirect evidence," *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1320 (11th Cir. 2012), that "suggests—but does not prove—a discriminatory motive," *Burrell v. Bd. of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1394 (11th Cir.1997).

ADEA claims based on circumstantial evidence follow the familiar *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework. *See Sims v. MVM, Inc.,* 704 F.3d 1327, 1332–33 (11th Cir. 2013) (discrimination); *Cobb v. City of Roswell, Ga. ex rel. Wood,* 533 Fed.Appx. 888, 895 (11th Cir.2013) (citing *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993)) (retaliation). Under that framework, an aggrieved employee must first make out a prima facie case of an ADEA violation. *Kragor,* 702 F.3d at 1308. The elements of a prima facie case differ for discrimination and retaliation claims.

■ For a prima facie case of discrimination, an employee must show that (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside the protected class more favorably; and (4) she was qualified to do her job. *See Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999) (Title VII).[1] Only the third element is disputed here.

■ For a prima facie case of retaliation, an employee must show that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal relationship between the two events. *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir.2002).

■ Protected conduct comes in two forms: opposition and participation. *See* 29 U.S.C. § 623(d). As will be discussed, the ADEA provides much more robust protection to participation than opposition. The second element is not in dispute. The third element, a causal relationship, requires an employee to demonstrate that the decision-maker was aware of her protected conduct and that the protected conduct and the adverse action were not wholly unrelated. *McCann v. Tillman,* 526 F.3d 1370, 1376 (11th Cir.2008).

■■ For both discrimination and retaliation claims, after an employee establishes a prima facie case, the *McDonnell Douglas* framework is identical. Establishing a prima facie case creates a presumption of discrimination (or retaliation), and the employer can rebut that presumption by presenting evidence of one or more nondiscriminatory (or nonretaliatory) reasons for its action. *See Kragor,* 702 F.3d at 1308 (citing *McDonnell Douglas,* 411

U.S. at 802–03, 93 S.Ct. 1817). The employer's burden on rebuttal is only one of production. *See id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The employer need not convince the Court that its proffered reasons are legitimate; it need only raise a genuine issue of fact as to whether it acted improperly. *See id.* (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997)).

■ If the employer presents one or more nondiscriminatory (or nonretaliatory) reasons, the employee "is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." *Id.* The employee can show pretext in two ways: "either directly by persuading the [C]ourt that a discriminatory reason more likely motivated [the employer] or indirectly by showing that [the employer's] proffered explanation is unworthy of credence." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

Having explained the law, the Court will address Calhoun's two claims: for discrimination and retaliation. The former is a loser; the latter, a winner.

### III. Discussion: Discrimination

#### A. Circumstantial Evidence

Calhoun presents only circumstantial evidence of discrimination, so she must rely on the *McDonnell Douglas* framework. Her claim fails under that framework because she has not adduced evidence that EPS's nondiscriminatory reason for failing to give her a raise was pretextual.

---

1. The Eleventh Circuit has adapted Title VII principles to ADEA cases. *Florence v. Novo Nordisk Inc.,* 569 Fed.Appx. 906, 910–11, No. 13–15206, 2014 WL 2869592, at *5 (11th Cir. June 25, 2014) (citing *Hairston,* 9 F.3d at 919).

### 1. Prima Facie Case

EPS disputes only the third element of Calhoun's prima facie case: that it treated similarly situated employees outside the protected class more favorably than it treated her. But the Court need not reach this question. Calhoun "cannot create a genuine issue of material fact as to whether [EPS's] proffered reasons for [denying her a raise] are pretext masking discrimination," so the Court can "assume that [she] has established a prima facie case of discrimination" and skip to the pretext analysis. *Alvarez v. Royal Atl. Developers*, 610 F.3d 1253, 1265 (11th Cir.2010).

### 2. Nondiscriminatory Reason

 EPS has presented a nondiscriminatory reason for not giving Calhoun a raise. White, the EPS decision-maker, said he did not receive a recommendation from Calhoun's Army supervisors at Fort Gordon that she deserved a raise. White explained that an EPS trainer at Fort Gordon would receive a raise after her Army supervisor recommended a raise to him. In Calhoun's case, that would have required Andrews, her direct supervisor, to recommend a raise to Berard, who, if he agreed, could forward the recommendation to Martinez, who, if he also agreed, could then forward it to White. And although Andrews recommended Calhoun for a raise in 2010, the recommendation never made it all the way up the chain to White. Accordingly, White never raised her pay.

This satisfies EPS's "exceedingly light" burden, *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir.2004), of producing a nondiscriminatory reason for denying Calhoun a raise. *See, e.g., Combs*, 106 F.3d at 1539 (nondiscriminatory reasons for promoting another employee instead of the plaintiff included "the recommendations of supervisors"); *cf. Thomas v. CVS/Pharmacy*, 336 Fed.Appx. 913, 915 (11th Cir.2009) (employer's nondiscriminatory reason for nonpromotion was that the plaintiff's supervisors had not recommended him for promotion).

### 3. Pretext

 Because EPS's nondiscriminatory reason would motivate a reasonable employer, Calhoun must rebut it head on. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir.2000) (en banc). She does not. In an attempt to do so, she points to comparator evidence. And while such evidence may, in some cases, be probative of pretext, *see Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276–77 (11th Cir.2008) (collecting cases), her evidence is not.

 Calhoun identifies two younger employees who received raises. One, Brandi Gates, is an invalid comparator because she did not work for EPS during Calhoun's employment. She was a trainer at Fort Gordon, but she was employed by InovaTech, an entirely separate Army contractor. She was not similarly situated to Calhoun, so is not a valid comparator. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997).

The second comparator is Michelle Kurki. She was a younger EPS employee, and she did receive a raise. It is worth noting that in its review of Calhoun's complaint, the Army found that Kurki was not a valid comparator because she held a different job title than Calhoun and was evaluated by different Army supervisors. That said, the Court need not decide whether Kurki is a valid comparator. Even if she is, EPS's treatment of her does not raise an inference of pretext. That is because Kurki represents only a tiny slice of the relevant comparators; by examining all the comparators—rather than just the one cherry-picked by Calhoun—it becomes clear that no reasonable jury could find EPS's explanation is pretextual. *See* 1 B. LINDEMANN ET AL., EM-

PLOYMENT DISCRIMINATION LAW ch. 2.II.C.4, at 2–85 & n. 261 (5th ed. 2012) ("Proof that individual employees, both within and outside the protected class, were alternately favored and disfavored, without any observable pattern, also can dispel the inference that some protected characteristic was the basis on which the employer distinguished among them." (collecting cases)).

Twenty-one other trainers worked at EPS and performed the same duties as Calhoun. Eight of those twenty-one received raises during the period when Calhoun was employed at EPS. Half of those eight were inside the protected class (i.e., over forty) and half were outside the protected class (i.e., under forty) as of December 2009, when Calhoun claims that she was entitled to her first raise. Stated differently: of the twenty-one similarly situated trainers, fourteen were outside the protected class, and only four of them (29%) received raises. Seven were inside the protected class, and four of them (57%) received raises.

Several older comparators received raises and many younger comparators did not; there is no apparent pattern of treating older employees worse or younger employees better. (If anything, there is a pattern of treating the older *better* than the younger, given the percentages described above.) As Judge Posner has explained in the race-discrimination context: "Such a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination." *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993) (Posner, J.).

So too here. There was evidence of a pattern, random with respect to age, in which some older employees did worse than younger employees and some did better. Calhoun has shown only that she fell into the former group rather than the latter. Pointing to one lonely comparator who was treated more favorably than she, while ignoring other comparators who were treated equally, does not raise a dispute of material fact as to pretext. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 642 (3d Cir.1998) ("We . . . hold that a plaintiff does not create an issue of fact [sufficient to show pretext] by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to her."); *Davis v. Dunn Constr. Co.*, 872 F.Supp.2d 1291, 1311 (N.D.Ala.2012) (citing *Simpson* and *Bush* to reach a similar holding with respect to the plaintiff's prima facie case).

What is more, Calhoun faces a high burden to show pretext because White, the ultimate decision-maker, was actually older than Calhoun and was himself within ADEA's protected class. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir.1991) ("[The employee] faces a difficult burden here, because all of the primary players behind the termination . . . were well over age forty and within the class of persons protected by the ADEA."). She has not met this high burden.

Calhoun has not adduced evidence to permit a reasonable jury to find pretext. Because she has not rebutted EPS's non-discriminatory reason for denying her a raise, EPS is entitled to summary judgment on her discrimination claim.

## IV. Discussion: Retaliation

Calhoun's retaliation claim is one of a rare breed: an employment-discrimination claim favoring the plaintiff without a dispute of material fact. Everyone agrees that Calhoun filed a discrimination complaint with the Army EEO office and that

EPS terminated her because she filed that complaint. Those are the material facts, and they are undisputed.[2] That leads to perhaps the unlikeliest outcome in an employment-discrimination case: summary judgment for the plaintiff.

The Court concludes that Calhoun is entitled to summary judgment on her retaliation claim based on EPS's admission, repeated over and over, that it terminated her for filing an EEO complaint. That conclusion is the same whether the admission is treated as direct or circumstantial evidence.

### A. Direct Evidence

■ Direct evidence is "evidence, which if believed, proves the existence of fact in issue without inference or presumption." *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir.1997) (quoting *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987)) (internal quotation marks omitted). "Evidence that only suggests discrimination, *see Earley v. Champion [Int'l] Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990), or that is subject to more than one interpretation, *see Harris v. Shelby [Cnty.] Bd. of Educ.,* 99 F.3d 1078, 1083 n. 2 (11th Cir.1996), does not constitute direct evidence." *Id.* The Eleventh Circuit has found direct evidence "where 'actions or statements of an employer reflect[ ] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.' " *Id.* (alteration in original) (quoting *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990)) (collecting cases). "The quintessential example of direct evidence" in an age-discrimination case would be " 'a management memoran-

dum saying, "Fire Early—he is too old." ' " *Id.* at 1190 (quoting *Earley,* 907 F.2d at 1081). And a similarly quintessential example in a retaliation case is: "Fire Merritt—he gave the most damning deposition testimony [in a Title VII lawsuit]." *Id.*

■ This case features direct evidence of retaliation. Charles White was the decision-maker who terminated Calhoun. In a declaration—one that EPS itself introduced into evidence—he explained:

> In May 2011, I learned that Ms. Calhoun had filed a complaint with the EEO office of the U.S. Army at Fort Gordon regarding Mr. Martinez. . . . I made the decision to terminate Ms. Calhoun's employment with EPS because I believe she knowingly filed a false complaint against Mr. Martinez to bolster her husband's claims against Mr. Martinez. I believe this demonstrated a tremendous lack of judgment on Ms. Calhoun's part, violated EPS policy regarding filing inaccurate reports with the government, and threatened EPS's contract with the U.S. Army.

That is direct evidence of retaliation. White stated that he terminated Calhoun because she filed an EEO complaint. His statement mirrors the "quintessential example[s] of direct evidence" set out in *Merritt,* 120 F.3d at 1190. The Court can "discern no material difference," *id.,* between the statement from *Merritt* ("Fire Merritt—he gave the most damning deposition testimony," *id.*) and White's statement (I fired Calhoun because she made an EEO complaint). *See id.*

And in a remarkable display of candor, EPS's general counsel echoed this explanation in a position letter he sent to the

---

**2.** EPS does dispute *some* facts, most notably whether Calhoun's EEO claim was meritless. But as will be explained, that fact is not material, because it cannot "affect the out-

come of the suit under the governing law." *FindWhat,* 658 F.3d at 1307 (quoting *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505) (internal quotation marks omitted).

EEOC during the commission's investigation of Calhoun's claims. He wrote:

> When EPS later learned that Ms. Calhoun had attempted to make a complaint against EPS's customer [i.e., the Army] to the Government EEO office and also learned of the circumstances surrounding her husband's simultaneous claims, EPS considered Ms. Calhoun's activity to amount to a tremendous error in judgment and conduct....

[15–1] at 6. He continued, concisely connecting the dots between Calhoun's complaint and her termination:

> The fact that [Calhoun] never did follow these clear procedures [to raise her discrimination claims internally at EPS rather than bringing them to the Army EEO office] makes it plain that this was not a case of her accidentally pursuing valid grievances through the wrong office, but instead represented a calculated effort on her part to support her husband's claims against Mr. Martinez. That was totally inappropriate conduct by Ms. Calhoun and, given these circumstances, EPS felt it best to end the employment relationship with Ms. Calhoun.

*Id.* at 8. That too is direct evidence of retaliation.

EPS insists that Calhoun "has no direct evidence of retaliation." EPS addresses only the position statement written by its general counsel; it ignores White's straightforward statement of retaliatory intent. In any case, the Court is not persuaded that the position statement is not direct evidence. EPS cites no authority whatsoever for its novel argument, which amounts to this: an employer may lawfully terminate an employee because she made

a formal EEO complaint as long as the employer is not aware of the *specific contents* of her complaint. The entirety of EPS's argument that the position statement is not direct evidence of retaliation is as follows:

> The position statement repeatedly states that EPS was unaware of [Calhoun] making any complaint of age discrimination. Moreover, the position statement repeatedly states that EPS only knew that [Calhoun] improperly went to the federal government's EEO office to involve herself in a controversy involving two federal government employees, one of whom was her husband.

[23] at 9.

This slices too finely. It is true that in the position statement EPS's general counsel disavowed knowledge of the contents of Calhoun's EEO complaint. He wrote that EPS did not know "the full details" of Calhoun's complaint because she filed it with the Army, not EPS. But he expressly and repeatedly avowed knowing *that she made an EEO complaint.*[3] *See, e.g.,* [15–1] at 6 ("EPS understands that Ms. Calhoun did make a complaint against one of EPS'[s] primary customer representatives, Mr. Michael Martinez (a Government employee), on or about May 3, 2011. She apparently made this complaint about one of our customer's managers to our customer's EEO office at Fort Gordon."); *id.* ("When EPS later learned that Ms. Calhoun had attempted to make a complaint against EPS's customer to the Government EEO office ...."); *id.* at 7 ("Ms. Calhoun's attempt to file meritless claims with the Government EEO office in order to advance her husband's position amounts to a violation of EPS'[s] policies

---

**3.** Moreover, the general counsel's suggestion that EPS did not know the contents of Calhoun's complaint is belied by White's contention that he terminated her because he believed her complaint was meritless. Necessarily, then, either EPS did know something of the complaint's substance, or White's judgment was baseless.

against filing inaccurate reports with the government.").

■ ■■■ As discussed immediately below, making an EEO complaint is absolutely protected activity. Because EPS knew Calhoun made an EEO complaint, its alleged ignorance of the substance of her complaint is irrelevant. *See Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir.1998) (finding a causal link where supervisors learned that employee had filed an EEOC charge of discrimination one day before engaging in adverse employment actions against her); *Smith v. City of Fort Pierce, Fla.*, 565 Fed.Appx. 774, 779 (11th Cir.2014) (holding that, to show a causal link, an employee must provide "evidence that [the decision-maker] knew about [the employee]'s EEOC charge prior to terminating her employment"); *Reeves v. DSI Sec. Svcs., Inc.*, 395 Fed.Appx. 544, 547 (11th Cir.2010) (finding no causal link where an employee "failed to show that the supervisors ... knew that he had filed a charge with the EEOC").

EPS has made no attempt to argue that White's statement is not direct evidence of retaliation. But giving it the benefit of the doubt, perhaps EPS reasons that White's statement does not show that Calhoun was terminated because she filed an EEO complaint, but only because she filed a *false* EEO complaint. No matter. Even filing a false EEO complaint is protected conduct.

■■■ Filing an EEO complaint is covered by the participation clause, and the protection afforded to participation is nearly absolute. *See Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1006 n. 18 (5th Cir.1969) (Title VII's participation clause, which mirrors the ADEA's, confers "exceptionally broad protection."); *see also Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir.2003) (Title VII's participation clause "is expansive and seemingly contains no

limitations." (citing *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999))).

■■■ Importantly, that near-absolute protection covers even false complaints. As the Eleventh Circuit has held: even "false statements made in the context of an EEOC charge ... are protected and cannot be grounds for dismissal or discipline...." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1175 (11th Cir.2000) (citing *Pettway*, 411 F.2d at 1007).

*Pettway*, a binding former Fifth Circuit case, elucidates this point. 411 F.2d at 998. There, an employee was terminated after he filed a charge with the EEOC and made statements in connection with its investigation. The employee brought a retaliation claim. The district court dismissed the claim based only on a finding that the statements were "false and inaccurate." *Id.* at 1004. The circuit reversed. It held

that where ... [an EEOC charge] satisfies the liberal requirements of a charge, the charging party is exercising a protected right under the Act. *He may not be discharged for such writing. The employer may not take it on itself to determine the correctness or consequences of it.*

*Id.* at 1007 (emphasis added) (footnotes omitted) (citations omitted). The emphasized sentences describe exactly what EPS did here according to White. It took it on itself to determine the correctness of Calhoun's EEO complaint, and, determining it to be incorrect, terminated her. That contravenes the unequivocal holding of *Pettway*.

The EEOC's compliance manual, which describes the broad scope of protection for participation activity, is also instructive:

The anti-discrimination statutes do not limit or condition in any way the protection against retaliation for participating in the charge process. While the opposition clause applies only to those who protest practices that they reasonably and in good faith believe are unlawful, the participation clause applies to all individuals who participate in the statutory complaint process. Thus, courts have consistently held that a respondent is liable for retaliating against an individual for filing an EEOC charge regardless of the validity or reasonableness of the charge. To permit an employer to retaliate against a charging party based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the anti-discrimination statutes.

EEOC Compliance Manual § 8–II(C)(2) (1998), 2006 WL 4672793 (footnote omitted) (citation omitted).[4] Again, the last sentence describes EPS's conduct in this case.

■ To be sure, these authorities discuss the sweeping protection given to employees who file EEOC charges. And Calhoun did not file an EEOC charge; she filed a formal complaint with the Army's EEO office. But that too is participation activity. Filing a complaint with a federal agency's EEO office is a first step in initiating a discrimination claim against the agency. See Allard v. Holder, 494 Fed. Appx. 428, 431 (5th Cir.2012) ("Similarly, before filing suit under the ADEA, a plaintiff must either file an EEO complaint [with the agency] or give notice of an intent to sue to the [EEOC]." (citing 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201)). Bringing an agency complaint is analogous to filing an EEOC charge against a private employer. See Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir.2008) ("This court has treated the requirement that a federal employee bring a complaint to his or her EEO for resolution, see 29 C.F.R. § 1614.105, as analogous to the requirement that a private sector employee first bring a complaint to the attention of the [EEOC] for resolution." (alteration in original) (quoting Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir.2003) (internal quotation marks omitted))).

■ An employee who lodges an agency EEO complaint thus enjoys protection as broad as one who brings an EEOC charge; both have engaged in protected participation activity. See Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 62 & n. 2 (2d Cir.2012) (Lohier, J., concurring) (writing that Title VII's participation clause "appears to include internal investigations of discrimination conducted by federal agencies through EEO officers"); Hashimoto v. Dalton, 118 F.3d 671, 680 (9th Cir.1997) ("[T]here can be little doubt that Hashimoto's visit to the EEO counselor constituted participation ....."), cert. denied 523 U.S. 1122, 118 S.Ct. 1803, 140 L.Ed.2d 943 (1998); accord Wesolowski v. Napolitano, 117 Fair Empl.Prac.Cas. (BNA) 1504, No. CV 211–163, 2013 WL 1286207, at *6 (S.D.Ga. Mar. 25, 2013) (holding that a federal employee engaged in protected participation activity merely by "contact[ing] an EEO counselor" at the

---

**4.** The EEOC compliance manual is "not entitled to full *Chevron[, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984),] deference," but it is entitled to a "measure of respect under the less deferential *Skidmore [v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89

L.Ed. 124 (1944)] standard" because it "reflect[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 400, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (citations omitted) (internal quotation marks omitted).

agency, even before he filed a formal complaint, because "the EEO counseling was sufficient to trigger the protection of the participation clause") (collecting cases).

Whether Calhoun's EEO complaint was false is of no moment. Even so, it turns out that it was not. EPS believed Calhoun's complaint was meritless because she filed it with the Army. It claims that she did so "in an obvious attempt to make trouble for [Martinez] and support her husband," who was involved in an employment dispute of his own with Martinez. The thrust of this suggestion is that the Army did not employ Calhoun; EPS did. So she should have filed her complaint with EPS, her actual employer, but chose to file it with the Army only to meddle with Martinez.

The EEOC dismissed this very argument. It held that the Army was Calhoun's joint employer, so she could properly bring an EEO complaint against the Army. The commission wrote that the Army had "establish[ed] a de facto employer-employee relationship" with Calhoun and "qualif[ied] as her joint employer." [15–2] at 5. The commission's conclusion that Calhoun had standing to bring a complaint against the Army further undermines EPS's position that it terminated her only because her complaint was meritless.

■ But even Calhoun's status as a de facto Army employee is irrelevant. Even if the Army was not her joint employer, EPS still could not have lawfully terminated her for filing an Army EEO complaint. The participation clause protects employees who file charges of discrimination against third-party employers. See 1 B. LINDEMANN, supra, ch. 15.II, at 15–8 & n. 30 ("[V]alid retaliation claims may exist when the participation involves a lawsuit or charge against a different employer."); EEOC COMPLIANCE MANUAL, supra, § 8–

II(C)(4) ("An individual is protected against retaliation for participation in employment discrimination proceedings even if those proceedings involved a different entity.").

The Seventh Circuit recently applied this principle to a case with facts eerily similar to this one. See Flowers v. Columbia College Chicago, 397 F.3d 532 (7th Cir.2005). Columbia College Chicago hired Michael Flowers and assigned him to work as a guidance counselor in a Chicago public high school, which had contracted with the college to provide such services. (Much like EPS hired Calhoun and assigned her to work as a trainer for the Army, which had contracted with EPS to provide such services.) Flowers filed a charge of discrimination against the school system alleging that it discriminated against him based on his religion. (Much like Calhoun filed a discrimination complaint against the Army alleging that it discriminated against her based on her age.) The college terminated Flowers "for the sole reason that he had complained about religious discrimination practiced by the high school." Id. at 532. (Much like EPS terminated Calhoun for the sole reason that she had complained about age discrimination practiced by the Army.) The college attempted to justify its decision to terminate Flowers by insisting that his "original charge was baseless because [it was] made against the Chicago school system, which did not employ him." Id. at 534. (Much like EPS attempts to justify its decision to terminate Calhoun by insisting that her original complaint was baseless because it was made against the Army, which did not employ her.)

Judge Easterbrook, writing for a unanimous panel, rejected the notion "that Title VII allows an employer to sack a person who complains about discrimination elsewhere." Id. He explained how a contract-

ed employee like Flowers (or Calhoun) is "in a bind":

[I]dentifying the "employer" in a borrowed-servant situation can be difficult.... [H]ad Flowers charged the College with failing to accommodate his religion, the College could have blamed the high school and insisted it was in no position to do anything; had Flowers filed the charge against the school system (as he did), it could have replied (as it did) that the College was his only employer. Perhaps *both* entities usefully could be deemed employers in such a situation, but even if the College was the only statutory "employer" it hardly seems a firing offense for Flowers to have thought otherwise. If a gaffe on a technical issue allowed the employer to show the worker the door, the anti-retaliation provision would be diluted to the point of uselessness. Technical mistakes in pursuing charges that may well have a good substantive footing do not render those charges so unfounded that the employer may reply with a discharge. It is not as if Flowers had filed his initial charge against Verizon or Boeing. The high school was, if not his "employer," at least using his labor.

*Id.* at 534–35 (citations omitted). Substitute "Calhoun" for "Flowers," "EPS" for "the College," and "the Army" for "the school system," and Judge Easterbrook could be describing this case. EPS admits that it terminated Calhoun because she filed a discrimination complaint against the entity to which EPS contracted her. That is direct evidence of unlawful retaliation.

EPS exerts much energy arguing that filing the Army EEO complaint was not protected activity because Calhoun fails the two-part test set out in *Little v. United Technologies, Carrier Transicold Division,* 103 F.3d 956 (11th Cir.1997). Under

that test, an employee's activity is protected only if she reasonably (i.e., objectively) and in good faith (i.e., subjectively) believed that her employer was engaged in unlawful employment practices. *Id.* at 960.

But EPS overlooks a crucial point: the two-part *Little* test applies only to retaliation claims brought under the *opposition* clause. *See id.* ("We have previously recognized that a plaintiff can establish a prima facie case of retaliation under the *opposition clause* of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." (emphasis added)); *see also Clover,* 176 F.3d at 1351 ("The parties agree that an employee who seeks protection under the opposition clause must have a 'good faith, reasonable belief' that her employer has engaged in unlawful discrimination." (citing *Little,* 103 F.3d at 960)).

*Little* does not apply to retaliation claims brought under the participation clause. *Cf. McShane v. U.S. Att'y Gen.,* 144 Fed.Appx. 779, 790 (11th Cir.2005) ("Thus, McShane failed to show that this conduct was protected under Title VII's participation clause and she, therefore, had to show a good-faith, reasonable belief that she suffered discrimination." (citing *EEOC v. Total Sys. Servs.,* 221 F.3d at 1174)); EEOC COMPLIANCE MANUAL, *supra,* § 8–II(C)(2) ("While the opposition clause applies only to those who protest practices that they reasonably and in good faith believe are unlawful, the participation clause applies to all individuals who participate in the statutory complaint process. Thus, courts have consistently held that a respondent is liable for retaliating against an individual for filing an EEOC charge regardless of the validity or reasonable-

ness of the charge.").[5] Because Calhoun engaged in participation activity, not opposition activity, she need not satisfy the two-part *Little* test.

■ Finally, the Army's dismissal of Calhoun's initial EEO complaint on the merits does not foreclose her retaliation claim. Nor does the Court's grant of summary judgment for EPS on her underlying age-discrimination claim. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1058–59 (11th Cir.1999) ("[A]n employee need not prove the underlying claim of discrimination for the retaliation claim to succeed."); *see also Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) ("The exceptionally broad protections of the participation clause extends to persons who have participated in any manner in Title VII proceedings.... Protection is not lost if the employee is wrong on the merits of the charge ..., nor is protection lost if the contents of the charge are malicious or defamatory as well as wrong."); *Wyatt v. City of Boston*, 35 F.3d 13, 15 (1st Cir.1994) ("As for the participation clause, 'there is nothing in its word-

ing requiring that the charges be valid, nor even an implied requirement that they be reasonable.'" (quoting 3 ARTHUR LARSON & LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 87.12(b), at 17–95 (2d ed.1994))).

Calhoun engaged in protected participation when she filed the EEO complaint regardless of its veracity or merit.[6] By stating that it terminated her because she filed what it believed to be a false complaint, EPS has admitted to retaliating against Calhoun for engaging in protected activity. EPS may have believed that it could terminate Calhoun for filing a false complaint, and it may have believed that Calhoun's complaint was false because she filed it with the Army, but it was wrong on both counts. This is direct evidence of retaliation.

In the face of direct evidence, summary judgment cannot be granted for EPS. *See Mora v. Jackson Mem'l Found.*, 597 F.3d 1201, 1205 (11th Cir.2010); *Newsome v. KwangSung Am., Corp.*, 798 F.Supp.2d 1291, 1298 (M.D.Ala.2011) (citing *Mora*, 597 F.3d at 1205).

5. Admittedly, the Eleventh Circuit has not squarely addressed this issue. *See King v. Butts County, Ga.*, 939 F.Supp.2d 1310, 1327 & n. 121 (M.D.Ga.2013) (citing *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir.1998) ("[W]e need not decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonable basis requirement.")). But most circuits that have addressed the issue have declined to apply a reasonable, good-faith belief requirement to retaliation claims brought under the participation clause. *See id.* at 1327 & n. 122 (collecting cases from the First, Fourth and Sixth circuits); *Wesolowski*, 2013 WL 1286207, at *7 (Eighth and Ninth circuits). *But see Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir.2006); *but cf. Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 892 (7th Cir.2004) (holding that participation activity is not protected if it is "not only unreasonable and meritless, but also motivated by bad faith").

And the district courts in our circuit have followed the same path. *See, e.g., Wesolowski*, 2013 WL 1286207, at *6 ("While a plaintiff must demonstrate that he had a reasonable good faith belief for opposition clause activity, there is no such requirement for participation clause activity."); *King*, 939 F.Supp.2d at 1310; *Booth v. Pasco County, Fla.*, 829 F.Supp.2d 1180, 1200–01 (M.D.Fla.2011) (declining to "read a good faith and reasonableness requirement into the participation clause").

6. The Army, in its final decision dismissing Calhoun's claim, agreed. It wrote that "the record is clear that [Calhoun] in fact engaged in protected Title VII activity when she initiated her EEO precomplaint and filed her formal EEO complaint in this matter." [43–1] at 68. The Army ultimately absolved itself of responsibility for retaliation only because EPS decided, without Army input, to terminate Calhoun.

■ Actually, Calhoun is entitled to summary judgment. When a plaintiff presents direct evidence of retaliation, the normal Rule 56 summary judgment standards apply. *See Burns v. Gadsden State Cmty. Coll.,* 908 F.2d 1512, 1518 (11th Cir.1990) (*McDonnell Douglas* framework "is inapplicable" when plaintiff adduces direct evidence); *Allen v. City of Athens,* 937 F.Supp. 1531, 1541–42 (N.D.Ala.1996) ("[A]t the summary judgment stage, a court should analyze circumstantial evidence under the *McDonnell Douglas* framework, while evaluating direct evidence under the general standards of Rule 56.").

In the usual case, when an employee presents direct evidence of discrimination (or retaliation), the employer then adduces competing evidence tending to show that it acted for some other, nondiscriminatory (or nonretaliatory) reason. For example, the employer may insist that the employee underperformed, violated work rules, was disagreeable, or the like. The conflicting evidence goes to a jury, who decides what to believe.

But this is not the usual case. EPS has adduced no competing evidence; it sticks to its guns. It has suggested no nonretaliatory reason for terminating Calhoun. It repeats, over and over, that it terminated her because she filed what it considered to be a false EEO complaint. As explained, that is not a nonretaliatory reason: filing an EEO complaint—even one that EPS considered to be false—is protected activity.

The presence of direct evidence that is accepted by the factfinder *proves* retaliation. *See Bell v. Birmingham Linen Serv.,* 715 F.2d 1552, 1557 (11th Cir.1983). True, the direct evidence here has not been accepted by a factfinder. But it need not be, because it is uncontroverted. EPS stands by its explanation and even introduced its own corroborating evidence (the White declaration). Juries decide disputes of fact; if the evidence is uncontroverted, there is no factual dispute for a jury to decide.

The result of EPS's failure to controvert the direct evidence is the same as if the evidence were presented to a jury and the jury accepted it as true: the issue of retaliation is *proved. See id.* If this case went to trial on the issue of EPS's retaliation, Calhoun would be entitled to judgment as a matter of law because "a reasonable jury would not have a legally sufficient evidentiary basis to find for [EPS] on that issue." FED.R.CIV.P. 50(a)(1). Or, put in terms of the summary judgment standard: Calhoun has adduced direct evidence of retaliation that would "entitle it to a directed verdict if not controverted at trial." *Four Parcels of Real Prop.,* 941 F.2d at 1438 (internal quotation marks omitted). She is "entitled to summary judgment" because EPS has not, "in response, 'come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548).

To survive summary judgment in the face of direct evidence of retaliation, EPS must at the very least adduce *some* evidence that could permit a factfinder to conclude that, despite the direct evidence, it acted for a nonretaliatory reason. It has not. Calhoun has adduced direct evidence of retaliation, and EPS adduced no contradictory evidence. There is no question for a trier of fact, and Calhoun is entitled to summary judgment.

**B. Circumstantial Evidence**

The Eleventh Circuit has set a high bar for determining that a statement is direct evidence. *See Merritt,* 120 F.3d at 1189–90 (collecting cases). Perhaps EPS's statements are not direct evidence under

that stringent standard. Either way, the result is the same. Calhoun would be entitled to summary judgment under the *McDonnell Douglas* framework.

■ Calhoun has established a prima facie case of retaliation. She engaged in protected activity, she suffered an adverse employment action, and there was a causal relationship between the two. The Court has already explained that filing the EEO complaint was protected activity. EPS does not dispute that termination is an adverse employment action. The causal relationship is so obvious it need not be explained. EPS admitted that it terminated Calhoun because she filed an EEO complaint, albeit one that White believed was false. The Court can imagine no stronger causal link between the protected activity (filing an EEO complaint, even a false one) and the adverse employment action (termination).

Calhoun's prima facie case of retaliation creates a presumption of discrimination in violation of the ADEA. *See Hairston,* 9 F.3d at 919 n. 8 (citing *Burdine,* 450 U.S. at 254 n. 7, 101 S.Ct. 1089). To rebut that presumption, EPS must advance a nonretaliatory reason for terminating her. *See id.* It has advanced none. It says only that it terminated her because she filed what it considered to be a false EEO complaint. While that may be a reason, it is not a nonretaliatory one. *Cf. Terry v. Ashcroft,* 336 F.3d 128, 140 n. 11 (2d Cir. 2003) (explaining that an employee's "reputation for being quarrelsome" was a nondiscriminatory reason for nonpromotion, but cautioning that if his "alleged reputation for being quarrelsome were shown to be based on his tendency to file non-frivolous EEO complaints, the existence of such a reputation could not be a legitimate, nondiscriminatory rationale for not promoting him").

EPS obliquely argues that it terminated Calhoun because she violated its policy against submitting false reports to the government. In general, violation of a company policy provides a nonretaliatory reason for termination. *See Kragor,* 702 F.3d at 1309. But Calhoun's alleged violation of the policy and her protected activity were one in the same: filing the complaint with the Army EEO office. EPS's reason is not nonretaliatory.

■ A proffered reason is nonretaliatory when the employer terminates an employee for violating policies that are unrelated to the protected activity. *See, e.g., Hoard v. CHU2A, Inc.,* 228 Fed.Appx. 955, 960 (11th Cir.2007) (employee left work without authorization, confronted other employees, and failed to account for billed time); *Dexter v. Amedisys Home Health, Inc. of Ala.,* 965 F.Supp.2d 1280, 1295–96 (N.D.Ala.2013) (employee regularly missed and rescheduled patient visits in violation of company policies); *Parris v. Keystone Foods, LLC,* 959 F.Supp.2d 1291, 1311–12 (N.D.Ala.2013) (employee was repeatedly cited for insubordination before she engaged in any protected activity); *Ashe v. Aronov Homes, Inc.,* 354 F.Supp.2d 1251, 1259 (M.D.Ala.2004) (employee violated company policy that required him to be present for the pouring of concrete slabs).

Here, EPS claims that it terminated Calhoun for violating a policy that in effect forbade her from engaging in protected activity: filing an EEO complaint that EPS deemed to be false. To sanction termination for violating such a policy would allow the employer to arrogate to itself an important power—determining the validity of discrimination complaints—specifically denied it by the ADEA, thus eviscerating the law's anti-retaliation provision. *See* EEOC COMPLIANCE MANUAL, *supra,* § 8–II(C)(2) ("To permit an employer to retaliate against a charging party

based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the antidiscrimination statutes.").

If EPS cannot lawfully terminate Calhoun for filing a false EEO complaint, then surely it cannot lawfully terminate her for violating a policy that forbids filing false EEO complaints. If EPS could terminate Calhoun for violating its policy despite the underlying conduct being indisputably protected, why not institute a policy that broadly forbids other types of protected conduct? Why not prohibit employees from making charges of discrimination, participating in an EEOC investigation, or testifying at a Title VII trial? An employee who engages in any of those activities would be violating company policy and could be terminated without consequence—anti-discrimination laws be damned. That cannot be. *Cf. EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1091 (5th Cir. 1987) (employee's waiver of right to file charge with EEOC was void as against public policy); *accord Hill v. Lazarou Enters., Inc.*, No. 10–61479–CIV, 2011 WL 860526, at *12 (S.D.Fla. Feb. 18, 2011) (same) (citing *Cosmair*).

EPS has presented no nonretaliatory reason for terminating Calhoun. Its proffered reason merely restates a retaliatory motive; EPS admits that it terminated her for engaging in protected activity but couches that admission in terms of a violation of its policies.

EPS has not rebutted the presumption of retaliation created by Calhoun's prima facie case. She is entitled to summary judgment. *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir.2005) (explaining that after the plaintiff establishes a prima facie case, "the burden then shifts to the [defendant] to offer a nondiscriminatory reason for its actions—the sec-

ond step [under *McDonnell Douglas*]. If the [defendant] fails to offer a legitimate explanation for its actions, [the plaintiff] is entitled to judgment as a matter of law." (internal citations omitted) (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1290–91 (11th Cir.1999))); *accord* 1 B. LINDEMANN, *supra*, ch. 2.II.B, at 2–37 ("If the employer fails to rebut the plaintiff's prima facie case by articulating a legitimate, nondiscriminatory reason for its decision, it loses. By failing 'to introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' the plaintiff is entitled to judgment as a matter of law." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993))).

## V. Conclusion

Defendant's motion for summary judgment [36] is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED for Defendant on Plaintiff's claim for discriminatory failure to raise her pay. Plaintiff's motion for summary judgment [15] is GRANTED. Summary judgment is GRANTED for Plaintiff on her claim for retaliatory termination. Plaintiff's motions to amend [21] and for leave to file [46] are GRANTED. Because Defendant is adjudged liable on Plaintiff's retaliation claim, this case will proceed to a trial on damages on that claim alone. The parties are DIRECTED to file a proposed consolidated pretrial order in accordance with Local Rule 16.4 on or before September 8, 2014.